**FILED**
CLERK, U.S. DISTRICT COURT

9/13/2022

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ CD _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>              v.<br><br>ALVARD GRIGORYAN,<br><br>              Defendant. | No. CR 2:22-cr-00410-MWF<br><br>I N F O R M A T I O N<br><br>[18 U.S.C. § 641: Conversion of Government Property in Excess of $1,000] |

The United States Attorney charges:

[18 U.S.C. § 641]

A.   INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

1.   Defendant ALVARD GRIGORYAN was a resident of Glendale, California.

2.   GMD Home Health Care, Inc. ("GMD") was a home health agency located in Glendale, California.  GMD had a business checking account with a domestic bank ending in 7499 ("the GMD Account").  Defendant GRIGORYAN owned GMD and was a signatory on the GMD Account.

3.    In approximately December 2019, GMD laid off its employees and ceased operations.

4.    On or about March 3, 2020, the Centers for Medicare and Medicaid Services ("CMS") revoked GMD's Medicare Program ("Medicare") billing privileges effective December 19, 2019.

Medicare

5.    Medicare provided health care benefits to individuals who were 65 years and older or disabled.  Medicare was administered by CMS, a federal agency under the United States Department of Health and Human Services ("HHS").  Medicare was a "health care benefit program," as defined by 18 U.S.C. § 24(b), in that it was a public plan or contract affecting commerce, and a "federal health care program," as defined by 42 U.S.C. § 1320a-7b(f).

6.    Medicare was divided into different program "parts": Part A (hospital services), Part B (physician services), Part C (Medicare Advantage), and Part D (prescription drug coverage).

The CARES Act Provider Relief Fund

7.    In March 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, which was designed to provide emergency financial assistance to the millions of Americans suffering due to the COVID-19 pandemic.

8.   The CARES Act appropriated moneys (the "Provider Relief Fund") to help health care providers ("Providers") who were financially impacted by COVID-19, as well as to provide care to patients who were suffering from COVID-19 and compensate Providers for the cost of that care.   HHS, through its agency, the Health Resources and Services Administration ("HRSA"), oversaw and administered the Provider Relief Fund.

9.   In order to rapidly provide funding to Providers during the pandemic, HRSA distributed payments under the CARES Act Provider Relief Fund ("Provider Relief Fund Payment" or "Payment") to Providers who: (a) billed Medicare fee-for-service (Parts A or B) in Calendar Year 2019; (b) were not currently terminated from participation in Medicare or precluded from receiving payment through Medicare Advantage or Part D; (c) were not currently excluded from participation in Medicare or other federal health care programs; and (d) did not currently have Medicare billing privileges revoked.   Providers meeting these criteria automatically received the Provider Relief Fund Payment and did not have to apply for the funding but were required to comply with the terms and conditions of the Provider Relief Fund ("Terms and Conditions") if they retained such funding.

1     <u>Terms and Conditions of Provider Relief Payment</u>

2     10.   Provider Relief Fund recipients attested to their

3 compliance with the Terms and Conditions in one of two ways.

4 First, Provider Relief Fund recipients were notified that they

5 could submit an attestation through an online portal confirming

6 receipt of the funds and agreeing to the Terms and Conditions.

7 Second, recipients were notified that, if they kept the money

8 for a period that exceeded 90 days from receipt, they were

9 deemed to have accepted the Terms and Conditions of the Provider

10 Relief Fund.

11     11.   Providers who attested to the Terms and Conditions

12 acknowledged that their commitment to full compliance with the

13 terms and conditions was material to the HHS Secretary's

14 decision to disburse Provider Relief Fund Payments to them.

15 Providers further acknowledged that noncompliance with any Term

16 or Condition could cause the HHS Secretary to recoup some or all

17 of the Payment.

18     12.   Providers who attested to the Terms and Conditions

19 certified that they:

20     a.   billed Medicare in Calendar Year 2019;

21     b.   provided diagnoses, testing, or care for

22 individuals with possible or actual cases of COVID-19 after

23 January 31, 2020;

24     c.   were not then terminated from participation in

25 Medicare or precluded from receiving payment through Medicare

26 Advantage or Part D;

27     d.   were not then excluded from participation in

28 Medicare or other federal health care programs;

4

    e.    did not then have Medicare billing privileges revoked;

    f.    would only use the Payment to prevent, prepare for, and respond to coronavirus, and that the Payment would reimburse the recipient only for health-care-related expenses or lost revenues that were attributable to coronavirus;

    g.    provided information relating to the Payment that was true, accurate, and complete and that any deliberate omission, misrepresentation, or falsification of any information was punishable by, inter alia, criminal penalties, including but not limited to imprisonment; and

    h.    would maintain appropriate records and cost documentation to substantiate the reimbursement of costs under the disbursement.

B.    CONVERSION OF GOVERNMENT PROPERTY

    13.   On or about April 27, 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendant GRIGORYAN knowingly and willfully converted to her own use, and the use of another, property of HHS, a department and agency of the United States, having a value in excess of $1,000, namely, money in the amount of $7,000, taken from an approximately $66,423.18 payment from the Provider Relief Fund

///
///
///

that was deposited into the GMD Account on or about April 17, 2020, to which defendant GRIGORYAN knew she was not entitled, with the intent to deprive HHS of the use and benefit of that money.

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

KRISTEN A. WILLIAMS
Assistant United States Attorney
Acting Chief, Major Frauds Section

JOSEPH S. BEEMSTERBOER
Acting Chief, Fraud Section
U.S. Department of Justice

NICHOLAS K. PEONE
Trial Attorney, Fraud Section
U.S. Department of Justice